# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FABIAN MASCAREÑAS,

     Plaintiff,

v.                                                    Civ. No. 23-52 GBW/LF

VILLAGE OF ANGEL FIRE, NEW
MEXICO and the HONORABLE
JO MIXON,

     Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND FOR QUALIFIED IMMUNITY AND GRANTING PLAINTIFF'S MOTION TO FILE SECOND AMENDED COMPLAINT

THIS MATTER is before the Court on Defendants' Motion to Dismiss and for Qualified Immunity (*doc. 8*), Plaintiff's Motion for Leave to File Second Amended Complaint (*doc. 31*), and the parties' accompanying briefing on these matters (*docs. 22, 27, 33, 35, 38*).  Having reviewed the briefing and being fully advised, the Court will GRANT in part and DENY in part the Motion to Dismiss and for Qualified Immunity and GRANT Plaintiff's Motion to File Second Amended Compliant.

## I.    PROCEDURAL BACKGROUND

Plaintiff Fabian Mascareñas is suing his former employer, the Village of Angel Fire, New Mexico ("Village"), and the Honorable Jo Mixon ("Mixon") under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment right to procedural due process.  *Doc. 1-1* at 25-27.  Plaintiff has also brought state law claims against both Defendants under

1

the New Mexico Whistleblower Protection Act ("WPA") and the New Mexico Fraud

Against Taxpayers Act ("FATA").  *Id*. at 23-25.

Plaintiff filed his First Amended Complaint Based on Violation of the New

Mexico Whistleblower Protection Act, the Fraud Against Taxpayers Act, and 42 U.S.C. §

1983 in state court on January 9, 2023.  *Doc. 1-1.* at 1.  Defendants removed the case to

federal court on January 19, 2023, *doc. 1*, and filed the instant Motion to Dismiss and for

Qualified Immunity on January 30, 2023, *doc. 8*.  Plaintiff then filed the instant Motion

for Leave to File Second Amended Complaint on May 22, 2023.  *Doc. 31*.  The Motion to

Dismiss and for Qualified Immunity was fully briefed on April 11, 2023.  *Docs. 8, 22, 27*.

The Motion for Leave to File Second Amended Complaint was fully briefed on June 20,

2023. *Docs. 31, 33, 35*.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to

relief that is plausible on its face.'"  *Leverington v. City of Colorado Springs*, 643 F.3d 719,

723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard

does not require "detailed factual allegations," but it does require more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When ruling on a 12(b)(6) motion, the court

must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)).  However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'"  *Id*. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

### B.  Motion to Amend

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course if certain temporal conditions are met.  Fed. R. Civ. P. 15(a)(1). Otherwise, as in the case here, the party seeking to amend its pleading must obtain

either the written consent of opposing parties or leave of the Court.  Fed. R. Civ. P.

15(a)(2).

The decision to grant leave to amend a complaint is within the Court's discretion.

*Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020).  However, "[t]he [C]ourt should

freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Refusing to leave

to amend is generally only justified upon a showing of undue delay, undue prejudice to

the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3

F.3d 1357, 1365 (10th Cir. 1993) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178,

182 (1962)).

### III.   FACTUAL BACKGROUND

Plaintiff alleges the following facts:

Plaintiff served as the Chief Procurement Office for the Village from June 16,

2015, to August 28, 2021.  *Doc. 1-1* ¶ 1.  During his tenure, Plaintiff reported to the

Village Manager and had various full-time responsibilities regarding the Village's

purchasing activities.  *Id*.  Jo Mixon ("Mixon") became the Mayor of the Village in

November 2019 and appointed Jay Mitchell ("Mitchell") to serve as Village Manager.

*Id*. at 1.  During Mixon's tenure, Plaintiff alleges that Mitchell, with the authority of

Mixon, revamped the Village's finance and procurement policies in complete disregard

for the requirements of the New Mexico Procurement Code ("NMPC") and the New

Mexico Governmental Conduct Act ("NMGCA"). *Id*. at 2. Plaintiff further alleges that Mitchell completely usurped Plaintiff's authority as head of procurement for the Village and forced authorization of multiple prohibited purchasing transactions. *Id*. Mitchell's employment as Village Manager was terminated on June 8, 2021. *Id*.

After Mitchell's termination, Terry Cordova ("Cordova"), the Village's previous Human Resource Director and Clerk, replaced Mitchell as Village Manager. *Id*. at 3. Under Cordova, Plaintiff alleges that the Village procurement activities continued to be conducted without regard to the requirements of the NMPC and NMGCA. *Id*. Plaintiff alleges twenty instances in which he believes the Village's purchasing decisions or procedures constituted fraud, waste, abuse, unlawful activity, or improper activity under both Mitchell and Cordova. *Id*. ¶¶ 9-28. Plaintiff further alleges that during several of these instances, he attempted to "uphold and maintain a system of financial and procurement controls consistent with applicable law." *Id*. at 3. Because of this, Plaintiff was "cast out," "became the focus of management scorn," was not invited to Village staff parties, and was the only employee not to receive a promised raise. *Id*. On June 23, 2021, Plaintiff raised his concerns regarding the Village's purchasing decisions and procedures to Mixon, suggesting that she request an investigation through the New Mexico Office of the State Auditor ("OSA") in relation to the twenty instances of the Village's alleged misconduct. *Id*. ¶ 30. Subsequently, Mixon filed a request for an investigation with the OSA. *Id*.

On July 20, 2021, Mixon informed Plaintiff that she had withdrawn the OSA investigation because it needed to be amended.  *Id*. ¶ 31.  That same day, Plaintiff contacted OSA himself to request an investigation of the Village.  *Id*.  Plaintiff submitted a request for a leave of absence, which was denied by Mixon.  *Id*. ¶ 32.  Plaintiff's request for leave of absence was subsequently approved by Cordova on July 21, 2021. *Id*. ¶ 33.  On August 24, 2021, Cordova contacted Plaintiff to let him know that OSA's investigation was complete and that it had revealed misconduct, but not fraud.  *Id*. ¶ 34. Cordova also informed Plaintiff that he was required to return to work on August 26, 2021.  *Id*.  Cordova additionally indicated to Plaintiff that measures had been put in place to protect him from retaliation.  *Id*.

Plaintiff returned to work on August 26, 2021.  *Id*. ¶ 37.  Upon return, Plaintiff inquired about both the measures put in place that Cordova had previously mentioned to him and the report relating to OSA's investigation.  *Id*.  Cordova sent him to Mixon for answers.  *Id*.  On August 28, 2021, Plaintiff met with Mixon.  *Id*. ¶ 38.  During their meeting, Mixon allegedly made the following decisions regarding Plaintiff's employment with the Village: Plaintiff would no longer be a supervisor, Plaintiff would no longer manage the Grants and Projects Department and would now be reassigned to work under the direction of the Finance Department head, rather than the Village Manager, and Plaintiff was forbidden from communicating with the Village attorney or the Village's auditors.  *Id*.

Plaintiff alleges that the actions taken by Mixon on August 28, 2021, constituted a demotion and a material change in the conditions of Plaintiff's employment within the spirit and letter of the Village of Angel Fire, New Mexico Code (the "Village Code"). *Id.* ¶ 39. Plaintiff claims that he was entitled to written notice of Mixon's actions and the reasons for Mixon's actions, as well as a predetermination hearing before he could be involuntarily demoted under Village Code. *Id.* ¶ 41. Plaintiff was given no advance notice of his alleged demotion and no predetermination hearing. *Id.* ¶ 42.

On August 31, 2021, Plaintiff resigned from his position as Chief Procurement Office of the Village. *Id.* ¶ 43. Plaintiff alleges that he was forced to resign from his employment with the Village because of his continuing concern for his personal well-being. *Id.* Additionally, Plaintiff alleges that Mixon's actions were a direct result of Plaintiff's lawful efforts in attempting to enforce compliance with the NMPC and NMGCA, as well as his initiation of an OSA investigation into the Village. *Id.*

IV. **ANALYSIS**

Defendants assert that Plaintiff's First Amended Complaint should be dismissed due to Plaintiff's failure to sufficiently plead any claim for which relief can be granted. *See generally doc. 8.* Defendants also request that the Court deny Plaintiff's Motion for Leave to File Second Amended Complaint as futile. *See doc. 33.* Plaintiff argues that he has pled the necessary elements to show deprivation of his liberty interest without due process in violation of the Fourteenth Amendment, as well as

violations of the Whistleblower Protection Act and the Fraud Against Taxpayers

Act.  *See generally doc. 22.*  He also argues that he should be permitted to file his Second

Amended Complaint for the purpose of setting forth the facts, circumstances, and

consequences of his alleged demotion, in particular, that his alleged demotion would

necessarily have resulted in a loss of pay pursuant to the Village Code.  *See generally doc.*

*31.*

     Although the Court recognizes that granting a motion to amend the complaint

typically moots a motion to dismiss the earlier complaint, *Gotfredson v. Larsen LP*, 432 F.

Supp.2d 1163, 1172 (D. Colo. 2006), the Court will dispose of both Plaintiff's motion to

amend and Defendant's motion to dismiss Plaintiff's First Amended Complaint in this

Order.  Plaintiff's motion to amend only adds three factual allegations, *see doc. 32* ¶¶ 40-

42, and it does not include any changes or additions to the underlying claims, *compare*

*doc. 8* ¶¶ 46-67 *with doc. 32* ¶¶ 48-70.  In addition, many of Defendant's arguments for

why the Court should deny Plaintiff's motion to amend overlap with their arguments

for why the motion to dismiss should be granted.

     As a result, the Court will first evaluate the merits of Plaintiff's Section 1983

claims.  Because the new information provided in Plaintiff's proposed Second Amended

Complaint relates to Plaintiff's Section 1983 municipal liability claim, the Court will

address the parties' arguments related to Plaintiff's Motion for Leave to File within the

section that analyzes the merits of Plaintiff's Section 1983 claim.  Finally, the Court will

assess the merits of Plaintiff's state law claims.

**A.**     **Section 1983 Claim Against Defendant Mixon in Her Individual**
         **Capacity**

Plaintiff brings a single Count III titled "Violation of 42 U.S.C. Section 1983."

This Count alleges that Defendant Mixon "was the highest ranking decision maker for

the Village and as such, her actions constitute the official policy of the Village," and that

"Defendants' termination of Plaintiff's property interest in his job . . . without notice

and an opportunity to be heard violates Plaintiff's right to due process of law."  *Doc. 1-1*

at 26.  Although Defendants argue that Count III only brings a single § 1983 claim, *doc. 8*

at 11-12, the Court finds that the First (and Second) Amended Complaint can be read to

bring both a claim against Defendant Mixon in her individual capacity, as well as a

*Monell*-type claim against Defendant Village.  Based on the following reasons, the Court

finds that Count III survives as a claim against the Village, but not against Defendant

Mixon because she is entitled to qualified immunity.

*i.  Qualified Immunity Legal Standard*

Qualified immunity protects public officials from liability "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  On a motion to dismiss based on

qualified immunity, a plaintiff carries a "heavy two-part burden," of showing that (1)

9

the facts alleged make out a violation of a constitutional right, and (2) the right at issue was clearly established at the time of defendant's alleged misconduct. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008)); *Leverington*, 643 F.3d at 732 (quoting *Pearson*, 555 U.S. at 232). The Court need not answer these questions sequentially but may use its "sound discretion" in determining which prong to address first. *Pearson*, 555 U.S. at 236.

      To meet his burden of showing that his right is clearly established under the second prong of the qualified immunity test, Plaintiff must provide "Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the [government official's] actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.") (quotations omitted). Additionally, a right may be clearly established by the clear weight of authority from case law in other circuits. *See Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). In other words, while "[w]e do not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established," and the

"inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotations omitted).

Although the *Twombly* standard may sometimes have "greater bite" in the qualified immunity context, the complaint need not include "all the factual allegations necessary to sustain a conclusion that [a] defendant violated clearly established law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (citation omitted). Instead, the operative question is whether plaintiff has "ple[d] factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights." *Iqbal*, 556 U.S. at 666.

### ii.   Defendant Mixon is Entitled to Qualified Immunity

The Court finds that Defendant Mixon is entitled to dismissal on the basis of qualified immunity because Plaintiff fails to meet his burden under the clearly established prong of the qualified immunity test.  In particular, the Court finds that, at the time of Mascareñas's and Mixon's meeting on August 28, 2021, Mixon would not have known that her actions in stripping Mascareñas of his managerial and other responsibilities, without yet reducing his pay, required a notice and hearing under the Village Code.  Because a failure to meet one prong of the two-prong test for qualified immunity is dispositive at the dismissal stage, the Court declines to address the other prong which concerns whether Mixon violated one or more of Plaintiff's constitutional rights.

For purposes of comparing the facts of the instant case with the facts of other relevant cases in order to determine if there was clearly established law that would have put Defendant on notice that her actions were unconstitutional, the Court finds the following facts to be material: (1) during the meeting between Mascareñas and Mixon on August 28, 2021, there was no explicit indication by Mixon that Mascareñas's job title was changing, (2) similarly, during the August 28, 2021, meeting, there was no explicit indication by Mixon that Mascareñas was going to receive a decrease in pay.  *See doc. 1-1* ¶ 38.

Plaintiff argues that Defendant Mixon is not entitled to qualified immunity because she unconstitutionally deprived Plaintiff of his property right to his job without due process when she demoted Plaintiff without notice and a predetermination hearing in violation of the Village Code.  *See doc. 22* at 30-31.  To prove that his asserted property right was clearly established, plaintiff relies primarily on the language of the Village Code and three cases within the Tenth Circuit – *Robbin v. City of Santa Fe*, 583 F. App'x 858 (10th Cir. 2014) (unpublished), *Robert v. Winder*, 16 F.4th 1367 (10th Cir. 2021), and *Green v. Barrett*, 174 F.3d 1136 (10th Cir. 1999).  *See doc. 22* at 30.

In *Robbin*, a former police captain brought a § 1983 claim against former city manager and interim police chief, alleging that his constitutional due process rights were violated when he was demoted from the rank of captain without proper procedural protections.  583 F. App'x at 859.  Under the Santa Fe City Code, exempt

employees lacked procedural due process protections.  *Id*. at 860.  Because the former

police captain had referred to himself as an exempt employee and a rank status memo

stated that the captain's rank was "exempt," the Court upheld the district court's grant

of summary judgment on qualified immunity grounds because a reasonable official

could have concluded that the former police captain fell outside of the protections of the

City Code.  *Id*. at 860-61, 864-65.

In *Roberts*, a former police Range Master, Roberts, brought a § 1983 claim against

the police department, the sheriff, and the former sheriff, alleging that his constitutional

due process rights were violated when his position of Range Master was eliminated,

and he was assigned to a lower paying position.  16 F.4th at 1371-72.  While serving as

Range Master, Roberts had obtained a merit rank advancement from Deputy to

Sergeant.  *Id*. at 1372.  Roberts remained a Sergeant following the elimination of his

Range Master position.  *Id*.  Under Utah law, a merit system officer holding a

permanent appointment may only be demoted, reduced in pay, suspended, or

discharged only for cause.  *Id*. at 1376.  The Deputy Sheriff's Merit Commission Policy

established four permanent ranks for Deputy Sheriffs: Deputy, Sergeant, Lieutenant,

and Captain.  *Id*.  Because Range Master was not recognized as a permanent rank, the

Court held that Roberts had no property interest in his position as Range Master.  *Id*. at

1376-77.  Additionally, the Court upheld the district court's grant of summary judgment

on qualified immunity grounds because, even if Roberts had a property interest in his

position as Range Master, the interest was not clearly established because the Sheriff's Office's and Utah Police Department's (UPD's) internal policies were ambiguous as to the Range Master position.  *See id.* at 1378 (finding the Sheriff's Office and UPD policies ambiguous because they did not address the position of Range Master at all).

In *Greene*, a deputy sheriff, Greene, brought a § 1983 action against the county sheriff in his official and individual capacities, alleging that the sheriff reduced Greene's rank without due process of law.  174 F.3d at 1139.  Under Wyoming law, a deputy sheriff cannot be discharged, reduced in rank or suspended without pay except for cause and after notice and opportunity for a hearing.  *Id.* at 1140-41.  Because the relevant Wyoming statute imposed a substantive limitation on sheriff's discretion to reduce the rank of a deputy sheriff, the Court held that Greene had a property interest in his rank as deputy.  *Id.*  However, the Court upheld the district court's grant of summary judgment on qualified immunity grounds because the statutory provision creating the property interest was ambiguous given that it could be interpreted in three different reasonable ways.  *See id.* at 1142-43 (finding one of three different interpretations most persuasive but recognizing that the right was not clearly established because there were other reasonable ways to interpret the statute).

Neither *Robbin* nor *Roberts* involved facts that are sufficiently "particularized" to the facts of the instant case such that they would have put Defendant on notice that her actions were unconstitutional.  *See Perry v. Durborow*, 892 F.3d 1116, 1124 (10th Cir.

14

2018).  In fact, neither case presents the conclusion that Plaintiff asks the Court to find –

that a reasonable official in Mixon's shoes should have been on notice that stripping an

employee of managerial and other responsibilities, before effectuating any sort of

change in title or pay, violates clearly established law.  In both *Robbin* and *Roberts*, the

plaintiffs were explicitly reduced in rank from one job title to another, with the plaintiff

in *Roberts* receiving a reduction in pay.  By contrast, in the instant case, Mixon never

explicitly indicated to Mascareñas that his job title or pay was changing.  The Court also

notes that *Robbin* is an unpublished case.  Although the Court may rely on an

unpublished opinion to find that "the law was *not* clearly established," "an unpublished

opinion . . . provides little support for the notion that the law is clearly established on a

point."  *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018).

    Contrary to Plaintiff's contention that *Greene* supports his claim that the law is

clearly established because the Village Code provisions are explicit, and not ambiguous,

the Court finds otherwise.  Both parties urge different interpretations of what

effectuates a demotion under § 2-3-5(A) of the Village Code.  Whether Mascareñas was

entitled to written notice and a predetermination hearing depends on whether Mixon

effectuated a demotion during her conversation with Mascareñas on August 28, 2021.

*See* Village of Angel Fire, N.M. Code § 2-3-5(A) (2019) ("A demotion occurs when an

employee is placed in a position with a lower salary."); *see id.* § 2-9-7(B) ("The village

shall conduct a predetermination hearing for any employee . . . The purpose of the

predetermination hearing is to permit the involved employee the opportunity to respond to any contemplated disciplinary action against him/her, with prior and sufficient notice of the contemplated action, which may result in the loss of monies to the employee, including: demotion . . .); *see id*. § 2-9-7(C) ("Prior to any involuntary demotion . . . the affected employee shall be given written notice of the contemplated action and the reasons for the contemplated action."). Plaintiff asks the Court to read § 2-3-5(A) to mean that a demotion is effectuated when an employee is placed in a position with a lower salary, even before the employee has yet to receive a reduction in pay. *See generally doc. 22* at 28. Alternatively, Defendants ask the Court to read § 2-3-5(A) to mean that a demotion is not effectuated until an employee receives a reduction in pay. *See generally doc*. 8 at 10.

The circumstances of this Village Code and the personnel action related to Plaintiff are quite similar to the facts which led to qualified immunity in *Robbins* and *Greene*. Mixon did not expressly move Plaintiff into a different position with lower pay or otherwise obviously reduce his salary. While the elimination of certain responsibilities may have led to a reduction of pay, there is no claim that Mixon must have known that consequence especially given that Plaintiff left before any reduction occurred. Thus, it was ambiguous whether Mixon "demoted" Plaintiff such that the Code would have required notice and a hearing. At least until Plaintiff had been reduced in pay as a consequence of Mixon's actions, Mixon could reasonably believe

16

that the Village Code did not require notice and a hearing.  As in *Robbins* and *Greene*,

this ambiguity means that Defendant Mixon is entitled to qualified immunity.  *Pearson*,

555 U.S. at 232.

### B.  Section 1983 Claim Against Defendant Village

Plaintiff's *Monell* claim survives dismissal because it is plausible that Defendant

Mixon's actions in reducing Mascareñas's management and supervisory

responsibilities, without written notice and a predetermination hearing, constituted an

unconstitutional decision of the final policymaker for the Village.  In particular, the

Court finds Plaintiff's new allegations in his Proposed Second Amended Complaint are

enough to show a plausible constitutional violation because Plaintiff pleads he was

required to receive a reduction in pay by virtue of his reduced management and

supervisory responsibilities.  *Doc. 32* ¶ 41.  Additionally, the Court finds that, for

purposes of the motion to dismiss, Defendants have conceded that Mixon, as Mayor of

the Village, was the final policymaker for the Village.

Municipalities cannot be held liable for the acts of their employees under 42

U.S.C. § 1983 on the basis of a respondeat superior theory.  *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 691-94 (1978); *see also Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir.

2010).  Instead, "[a] plaintiff suing a municipality under section 1983 for the acts of one

of its employees must prove: (1) that a municipal employee committed a constitutional

violation, and (2) that a municipal policy or custom was the moving force behind the

constitutional violation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  In order to meet this burden, a plaintiff must first "identify a government's policy or custom that caused the injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (internal quotations and citation omitted).  The plaintiff is then required to show "that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id*.

An official policy or custom may take different forms.  *See Cacioppo v. Town of Vail, Colo.*, 528 F. App'x 929, 931-32 (10th Cir. 2013) (unpublished).  Specifically, the requisite "policy" can be established by demonstrating: (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).  For liability to attach, the plaintiff must demonstrate a "direct causal link between the custom or policy and the violation alleged." *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (internal citations omitted).

The Village argues that Count III of the Plaintiff's Complaint which claims that Defendant Mixon was the highest-ranking decision maker for the Village, and as such, her actions constituted the official policy of the Village—is subject to dismissal under

Rule 12(b)(6) because it fails to sufficiently allege a claim based on *Monell* liability.  *Doc. 8* at 12.  Specifically, the Village contends that Plaintiff fails to plead facts sufficient to identify a specific unconstitutional policy, practice, or official act of the Village.  *Id*.

Plaintiff argues that dismissal of Count III is inappropriate under Rule 12(b)(6) because his allegations are sufficient to allege an unconstitutional custom or policy in the form of Mixon acting as a person with final policymaking authority.  *Doc. 22* at 32.  After assessing the additional allegations set forth in Plaintiff's proposed Second Amended Complaint, the Court agrees with Plaintiff.

i. *The Court Will Grant Plaintiff Leave to File His Proposed Second Amended Complaint*

The salient differences between Plaintiff's First Amended Complaint and the proposed Second Amended Complaint include the addition of three factual allegations: (1) an explanation of § 2-3-1(A) of the Village Code, which explains the Village's pay plan standards, (2) an allegation stating that according to the previous Village Human Resources Director and head of Human Resources Department, by virtue of the reduced management and supervisory responsibilities, Mixon would have required department reclassification from "Administrative/Executive" to "Administrative" and, accordingly, a reduction in pay grade, and (3) an explanation that due to the required reduction in pay grade, the changes implemented by Mixon would have been characterized as a "demotion" under the Village Code.  *See doc. 32* ¶¶ 40-42.

The Court grants Plaintiff leave to file his proposed Second Amended Complaint since three of the four *Frank/Foman* factors favor amendment.  *Frank*, 3 F.3d at 1365; *Foman*, 371 U.S. at 182.  While Plaintiff does not provide the Court with adequate reasoning behind why the new allegations set forth in the proposed Second Amended Complaint were not in the First Amended Complaint, the other three *Frank/Foman* factors favor amendment.  Amendment is not unduly prejudicial because, at this stage in the proceedings, making additional factual allegations about the same occurrences pled in the First Amended Complaint does not materially impact Defendants' ability to defend against them.  Amendment is not done in bad faith since there is no showing of an improper motive or purpose.  Finally, amendment is not futile because the new allegations sufficiently assist the court in deciding the underlying legal issue—whether Mascareñas was entitled to procedural due process protections.

### a.  Undue Delay

Plaintiff does not provide the Court with adequate reasoning behind why the new allegations set forth in the proposed Second Amended Complaint were not in the First Amended Complaint.  However, the other three *Frank/Foman* factors—undue prejudice, bad faith, and futility—favor amendment and outweigh any problems associated with the delay.  Emphasis in this inquiry is on the adverb: "Lateness does not of itself justify the denial of [an] amendment."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196,

1205 (10th Cir. 2006) (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).

Plaintiff's lack of reasoning for his undue delay is not fatal to amendment. Based on the lack of prejudice and bad faith, and the fact that the new allegations set forth clarify existing facts and claims, the Court is persuaded that justice requires leave to amend. *See Minter* at 1204 ("The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.") (citation omitted).

> b.  Undue Prejudice

The proposed Second Amended Complaint is not unduly prejudicial to Defendants. "Courts typically find prejudice only when amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). This unfairness occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. (citations omitted).

Plaintiff's proposed Second Amended Complaint has none of these flaws. It does not plead additional claims, add additional parties, articulate a new theory of liability, or allege significant new factual occurrences. *See generally doc. 32*. Rather, it clarifies how a reduction in Plaintiffs duties and supervisory authority resulted in him

being placed in a position with a lower salary.  *Id*. ¶¶ 40-42. Adding these additional

details to the First Amended Complaint, which already alleged that a reduction in his

duties and supervisory authority was a demotion, does not materially affect

Defendants' ability to defend against them at this stage of litigation.

### c.  Bad Faith

Plaintiff's Second Amended Complaint is not proposed in bad faith.  Bad faith

"can be inferred if the proposed amendment directly contradicts allegations made in the

original pleading, such that the original and amended factual accounts cannot be

reconciled," or "if a party seeks leave to amend for an improper purpose." *Rivera v.*

*Volvo Cars of N. Am., LLC*, Civ. No. 13-00397 KG/KBM, 2015 WL 12860553, at *4 (D.N.M.

Feb. 9, 2015) (quoting *Colo. Civil Rights Comm'n v. 1950 Logan Condos. Condo. Ass'n*, Civil

Action No. 13-cv-02583-PAB-MJW, 2013 WL 6858703, at *1 (D. Colo. Dec. 30, 2013)).

Defendants do not contend that Plaintiff seeks leave to amend in bad faith.  The

proposed amendments do not contradict the allegations made in the First Amended

Complaint, and the Court finds no improper purpose behind Plaintiff's Motion for

Leave to File Second Amended Complaint. Thus, Plaintiff's Second Amended

Complaint is not proposed in bad faith.

### d.  Futility

Based on the record before the Court, amendment is not futile.  Futility exists

where "the proposed amended complaint would be subject to dismissal for any reason,

including that the amendment would not survive a motion for summary judgment."

*E.SPIRE Comm'ns, Inc. v. N.M. Pub. Regul. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004)

(quoting *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997)).

Defendants make three arguments for futility. First, they contend that certain alleged

facts are conclusory allegations, legal conclusions, and opinions which are not entitled

to an assumption of truth under Fed. R. Civ. P. 12(b)(6). *Doc. 33* at 9-14. Second, they

contend that Plaintiff does not have standing because the proposed Second Amended

Complaint does not include well pled facts showing that a decrease in pay ever actually

occurred. *Id*. at 14-18. Third, they contend that the new alleged facts do not clarify or

correct the pleading deficiencies identified to their Motion to Dismiss and Reply. *Id*. at

18-19. Because the Court has previously addressed Defendant's qualified immunity

argument and subsequently addresses Defendant Village's *Monell* argument, the Court

will not address Defendant's third futility argument in this section.

Plaintiff's proposed amendments do not present legal conclusions because they

do not present any formulaic recitation of the elements of a cause of action. *See Iqbal*,

556 U.S. at 663 (finding that threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice). Rather, the proposed

amendments introduce new factual allegations about the operation of the Village's

Human Resources procedures. These additional allegations assist the Court in deciding

the underlying legal issue—whether Mascareñas was entitled to procedural due process

protections.  Thus, Defendants first futility argument fails.

Defendants also contend that Plaintiff's Second Amended Complaint is futile

because all of Plaintiff's claims should be dismissed on the basis that Plaintiff does not

have standing.  *Doc. 33* at 14-18.  Specifically, Defendants argue that Plaintiff fails to

allege an injury in fact because Mascareñas was never given a reduction in pay.  *Id*. at

15-16 (citing *TransUnion LLC v. Ramirez*, 549 U.S. ---, 141 S. Ct. 2190 (2021)).  Thus,

Plaintiff's injury was "based on mere risk of future harm, without more." *Id*. at 7.

Under Article III's "case-or-controversy" requirement, an individual plaintiff has

standing when he suffers (1) a concrete and particularized injury in fact, which is (2)

fairly traceable to the defendant's actions, and (3) likely to be redressed by a favorable

decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Injury in fact requires

that a plaintiff has suffered an invasion of a legally protected interest that is concrete

and particularized and actual or imminent, not conjectural or hypothetical.  *Id*.

At this stage in the proceedings, the Court is persuaded that Plaintiff has alleged

enough facts to show that he was injured by an involuntary demotion without due

process of law.  While Plaintiff will ultimately need to prove that he would have

received a decrease in pay, the fact that Mixon stripped Mascareñas of his managerial

and supervisory responsibilities without written notice and a predetermination hearing

is not hypothetical.  Because the Court finds that Plaintiff has alleged an actual harm—

that he was stripped of his managerial and supervisory responsibilities, which ultimately and necessarily would lead to a decrease in pay, without written notice and a predetermination hearing—Defendants second futility argument also fails.

Because the *Frank/Foman* factors favor amendment, the Court will grant Plaintiff leave to file his proposed Second Amended Complaint.

      ii.   *Plaintiff Sufficiently Alleges a Plausible Constitutional Violation by the Final Policymaker for The Village.*

Plaintiff's *Monell* claim survives dismissal because he sufficiently alleges a plausible constitutional violation by the final policymaker for the Village. Municipalities can be sued for money damages under § 1983 if a plaintiff alleges a municipal "policy or custom" that directly caused the violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 694. The decision of a municipal employee qualifies as a "policy or custom" if the employee is the final policymaker for the municipality "in a particular area, or on a particular issue." *Couser v. Gay*, 959 F.3d 1018, 1032 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)).

      a.  Mixon as Final Policymaker for Village

Plaintiff contends that Mixon was the highest-ranking decision maker for the Village, and as such, her actions constitute official policy of the Village. *Doc. 1-1* ¶ 63. Defendants fail to respond to this argument, and they do not provide any facts or law indicating how Mixon, as the Mayor of the Village, was not the final policymaker for the Village. Thus, at this stage in the proceeding, the Court finds that Defendants

concede this contention.  *See Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (where a party does not respond to an issue raised by its opponent, the court is "not required to do his work for him and dissect the [opposing party's] plausible argument"); *see also Barrios v. Albuquerque Bernalillo Cnty. Water Util. Auth.*, Civ. No. 17-56 KK/JHR, 2018 WL 2107789, at *7-8 (D.N.M. May 7, 2018) (assuming without deciding that where a party failed to respond to opponent's argument, the non-responding party conceded the issue).

### b.  Plausible Constitutional Violation

Mixon, as final policymaker for the Village in implementing the Village's Personnel Policy, plausibly caused a violation of Plaintiff's constitutional rights by stripping Mascareñas of his managerial and supervisory responsibilities, which ultimately would lead to a decrease in pay, without written notice and a predetermination hearing.  The Fourteenth Amendment protects individuals from deprivations of "life, liberty, or property, without the due process of law."  U.S. Const. amend. XIV.  This Court engages in a two-step inquiry to determine if a plaintiff has been denied procedural due process. First, it determines whether the individual had a protected interest under the Due Process Clause. *See, e.g., Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).  If so, it examines whether the individual received an appropriate level of process.  *Id*.

The parties do not dispute that Plaintiff had a protected property interest in his employment with the Village. *See doc. 27* at 5. Rather, the parties dispute whether Mascareñas was involuntarily demoted within the meaning of demotion set forth in the Village Code and thus entitled to procedural due process protections. *See* Village of Angel Fire, N.M. Code § 2-3-5(A) (2019) ("A demotion occurs when an employee is placed in a position with a lower salary."); *see id.* § 2-9-7(B) ("The village shall conduct a predetermination hearing for any employee . . . The purpose of the predetermination hearing is to permit the involved employee the opportunity to respond to any contemplated disciplinary action against him/her, with prior and sufficient notice of the contemplated action, which may result in the loss of monies to the employee, including: demotion. . .); *see id.* § 2-9-7(C) ("Prior to any involuntary demotion . . . the affected employee shall be given written notice of the contemplated action and the reasons for the contemplated action."). Defendants contend that Mascareñas was not entitled to written notice and a predetermination hearing because he was not involuntarily demoted because he never received a reduction in pay. *Doc. 8* at 10-11. Plaintiff contends that he was entitled to written notice and a predetermination hearing because Mixon involuntarily demoted him by stripping him of his managerial and other responsibilities, which would have required department reclassification and, accordingly, a reduction in pay. *Doc. 32* ¶¶ 40-42.

Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has alleged enough facts to assert a plausible constitutional violation at this stage. First, Plaintiff has alleged that he was placed in a different employment position without written notice of the contemplated actions and the reasons for the contemplated action and without a predetermination hearing. In addition, Plaintiff has sufficiently alleged that the reduced management and supervisory responsibilities given to him on August 28, 2021, would have required a reduction in pay grade. *Id.* Thus, it is plausible that Mascareñas was involuntarily placed in a position with a lower salary without written notice and a predetermination hearing in violation of his constitutional right to due process.

Accordingly, Plaintiff's *Monell* claim survives dismissal because he sufficiently alleges a plausible constitutional violation by Mixon as final policymaker for the Village in implementing the Village's Personnel Policy regarding his employment.[1]

### A. Plaintiff's Claim Under the New Mexico Whistleblower Protection Act

Plaintiff's Whistleblower Protection Act ("WPA") claim survives dismissal because Plaintiff has pled facts sufficient to establish that he engaged in a protected disclosure which plausibly led to an adverse employment action against him. In

---

[1] In the circumstances of this case, success for Plaintiff's 1983 claim against the municipality may require not only proving that Mixon's actions necessarily would have reduced his pay, but also that she knew of that necessary consequence. The parties do not brief that issue and thus the Court does not address the sufficiency of Plaintiff's *Monell* claim on that point.

particular, the Court finds it plausible that Mixon stripped Mascareñas of his managerial and supervisory responsibilities, which would ultimately lead to a decrease in pay, in response to the communications he made to her and OSA regarding what he believed was unlawful or improper activity by the Village.

The WPA forbids public employers from, among other things, "tak[ing] any retaliatory action against a public employee because the public employee . . . communicates to the public employer or third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act[.]" N.M. Stat. Ann. § 10-16C-3.  To establish a claim under N.M. Stat. Ann. § 10-16C-3, a plaintiff needs to establish three elements: (i) the employee engaged in a protected disclosure; (ii) the employer took an adverse employment action against the employee; and (iii) a causal connection exists between the protected disclosure and the adverse action.  *See generally Lerma v. State*, No. A-1-CA-39774, 2023 WL 5696175 (N.M. Ct. App. Aug. 29, 2023); *see also Walton v. New Mexico State Land Off.*, 113 F.Supp.3d 1178, 1199 (D.N.M. 2015) (finding this test to be a correct interpretation of N.M Stat. Ann. § 10-16-3).

      i.   *Plaintiff Has Pled Facts Sufficient to Establish That He Engaged in a Protected Disclosure.*

Under the WPA, a protected disclosure occurs when an employee:

A.  communicates to the public employer or third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;

B.  provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act; or

C.  objects to or refuses to participate in an activity, policy or practice that constitutes an unlawful or improper act.

N.M. Stat. Ann. § 10-16C-3.

The WPA defines an "unlawful or improper act" as:

a practice, procedure, action or failure to act on the part of a public employer that:

(1)  violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;

(2)  constitutes malfeasance in public office; or

(3)  constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

N.M. Stat. Ann. § 10-16C-2(E).

Finally, the WPA defines "good faith" as follows:

A.  "good faith" means that a reasonable basis exists in fact as evidenced by the facts available to the public employee

N.M. Stat. Ann. § 10-16C-2(A).

Plaintiff alleges that he communicated information to Defendant Mixon and the Office of the State Auditor about the Village's conduct that he believed constituted an unlawful or improper act.  As a result, the Court finds that Plaintiff has alleged facts sufficient to show that he engaged in a protected disclosure under N.M. Stat. Ann. § 10-16C-3(A).

Defendants contend that Plaintiff has not pled facts showing that he made communications of unlawful or improper activity.  *Doc. 8* at 16.  Defendants argue that

the Court cannot infer that Plaintiff ever communicated any of his alleged complaints to Mixon or OSA.  *See generally doc. 8* at 16.  Taking Plaintiffs factual allegations as true, the Court finds it plausible that Plaintiff communicated his complaints to Mixon and OSA.  *See doc. 1-1* ¶ 30 ("On June 23, 2021, Plaintiff met with Mayor Mixon and suggested to her that the Village should request an investigation through the New Mexico Office of the State Auditor ("OSA") in relation to the matters described in this Complaint"); *see also id.* ¶ 31 ("On July 20, 2021, Mayor Mixon informed Plaintiff that she had withdrawn the investigation request because it needed to be amended. Later that same day, Plaintiff contacted OSA and requested an investigation.").

Defendants also contend that Plaintiff has not pled particularized facts showing how he developed a good faith belief of unlawful or improper activity.  *Doc. 8* at 18.  "Whether an individual has such a reasonable belief is determined by an objective test: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee would reasonably conclude that the actions of the government evidence wrongdoing."  *Velasquez v. Regents of N. New Mexico Coll.*, 484 P.3d 970, 979 (N.M. Ct. App. 2020) (quoting *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1328 (Fed. Cir. 2020)).  Plaintiff alleges that he believed in good faith that each instance of the Village's alleged willful failure to comply with the NMPC and NMGCA constituted unlawful or improper acts under N.M. Stat. Ann. § 10-16C-2(E).  *Doc. 1-1* ¶ 49.  Violations of state law and state administrative rules fall within the definition of

"unlawful or improper acts" under the WPA.  N.M. Stat. Ann. § 1-16C-2(E).  Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has alleged particularized facts showing how he developed a good faith belief of unlawful or improper activity.  This conclusion is further bolstered by the fact that Cordova allegedly told Mascareñas that the OSA investigation had revealed "misconduct but not fraud."  *Doc. 1-1* ¶ 34.

Defendants further contend that Plaintiff's disclosures to Mixon and OSA fall outside of WPA's protection because his disclosures concerned communications he was required to make as part of his job as Chief Procurement Officer of the Village.  *Doc. 8* at 15.  Citing to *Wills v. Board of Regents of University of New Mexico* as one of their main sources of authority, Defendants contend that the WPA does not protect communications that employees are required to make as part of their job responsibilities.  357 P.3d 453 (N.M. Ct. App. 2015); *see doc. 8* at 15-16.  However, in *Lerma*, the New Mexico Court of Appeals recently rejected the *Wills* reading of the WPA, ruling that communications made through ordinary workplace channels or as part of an employee's normal work duties are not excluded from protection under the WPA.  2023 WL 5696175, at *1.  In light of *Lerma*, the Court finds that all of Mascareñas alleged disclosures, regardless of whether they were made as communications he was required to make as part of his job, fall inside WPA's protection.

Thus, Plaintiff has pled facts sufficient to establish that he engaged in a protected disclosure under the WPA.

> ii. *Plaintiff has pled facts sufficient to establish that Mixon took an adverse employment action against him.*

Plaintiff has pled facts sufficient to establish that Defendant Mixon took adverse employment actions against him. The WPA defines "retaliatory action" as follows:

> D. "retaliatory action" means taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment

N.M. Stat. Ann. § 10-16C-2(D).

At a minimum, Plaintiff has alleged facts to show that Mixon: (1) eliminated Plaintiff's supervisory authority and other managerial duties, (2) placed restrictions upon him in relation to procurement activities, (3) changed who Plaintiff reported to, (4) forbid Plaintiff from communicating with the Village attorney or the Village's auditors. *Doc. 1-1* ¶ 38.  At the pleading stage, this is enough for the Court to determine that Plaintiff has pled facts sufficient to establish that Mixon took adverse employment actions against him.

> iii. *Plaintiff has pled facts sufficient to establish that a causal connection exists between his protected disclosure and the adverse action.*

Plaintiff has pled facts sufficient to establish that a causal connection exists between his alleged disclosures to Mixon and OSA and the actions Mixon took on August 28, 2021, in regard to Mascareñas employment with the Village.  Under the

WPA, plaintiff has the burden of establishing a causal connection between protected activity and the retaliatory action at issue. *Lerma*, 2023 WL 5696175, at *7. The New Mexico Court of Appeals has looked to the New Mexico Supreme Court's uniform jury instructions when elaborating on the causation element under the WPA. *Id.* The Court in *Lerma* explained:

> Although the NMWPA does not elaborate on the causation element, our Supreme Court has adopted a uniform jury instruction explaining that "engagement in protected activity is a cause of an employer's retaliatory action if the employee's protected activity was a factor that motivated, at least in part, the employer's action against the employee." UJI 13-2324. Importantly, the instruction defines "motivating factor" as "a factor that plays a role in an employer's decision to act," and explains that "[an] employee's protected activity need not be the only reason, nor the last reason, for the employer's action."

*Id.*

Timing can also support a reasonable inference that retaliation is a factor in motivating an adverse employment action. *See Velasquez*, 484 P.3d at 983 ("Temporal proximity between protected conduct and adverse employment action is one factor that may support an inference of retaliatory motive.").

The Court finds that Plaintiff has pled facts sufficient to establish that Mixon's actions—eliminating Mascareñas supervisory authority, placing restrictions upon him in relation to procurement activities, changing who he reported to, and banning him from communicating to certain actors in the Village—were plausibly motivated in part by Mascareñas disclosures regarding unlawful and improper activity by the Village.

34

The temporal proximity between Plaintiff's disclosures and Mixon's actions further

bolster the plausible causal connection.  Plaintiff allegedly disclosed the unlawful and

improper activity to Mixon on June 23, 2021.  *Doc. 1-1* ¶ 30.  Subsequently, Plaintiff

allegedly disclosed the unlawful and improper activity to OSA on July 20, 2021.  *Id*. ¶

31.  Plaintiff was on leave from July 21, 2021, to August 26, 2021.  *Id*. ¶¶ 33-34.  Two

days following Plaintiff's return to work, on August 28, 2021, Mixon took the

aforementioned plausible adverse employment actions during a conversation in which

Mascareñas was inquiring about the OSA report pertaining to the investigation he

requested.  *Id*. ¶ 38.  Accordingly, Plaintiff's allegations are sufficient to survive

Defendants' Motion to Dismiss.

### B.  Plaintiff's Claim Under the New Mexico Fraud Against Taxpayers Act

With respect to Count II of Plaintiff's Second Amended Complaint claiming

retaliation prohibited by the New Mexico Fraud and Taxpayers Act (FATA), the Court

holds that Plaintiff must allege that his protected disclosures were reasonably related to

the furtherance of a FATA enforcement action.  Because he does not argue that he does

so, *see generally doc. 22* at 24-25, dismissal of Count II is warranted.

Both parties urge different interpretations of N.M. Stat. Ann. § 44-9-11(B).  N.M.

Stat. Ann. § 44-9-11(B) reads as follows:

> An employer shall not discharge, demote, suspend, threaten, harass, deny
> promotion to or in any other manner discriminate against an employee in the
> terms and conditions of employment because of lawful acts of the employee on
> behalf of the employee or others in disclosing information to a government or

law enforcement agency or **in** furthering a fraud against taxpayers action, including investigating, initiating, testifying, or assisting in an action filed or to be filed pursuant to the Fraud Against Taxpayers Act.

N.M. Stat. Ann. § 44-9-11(B).

Plaintiff argues that there is no requirement contained in the statute that Plaintiff's actions had to have been taken in furtherance of FATA action because the "or" in between "in disclosing information to a government or law enforcement agency" and "in furthering a fraud against taxpayers action" requires the court to read the statute as protecting any disclosure of information to a government or law enforcement agency, regardless of what type of information is disclosed. *Doc. 22* at 23-25. Defendants contend that the plain language of the collective statute requires that a retaliation claim brought under N.M. Stat. Ann. § 44-9-11(B) be brought with, or have some reasonable connection to, an underlying *qui tam* proceeding. *Doc. 8* at 30-33.

Neither the New Mexico Court of Appeals nor Supreme Court have interpreted N.M. Stat. Ann. § 44-9-11(B), and there is no binding authority otherwise. Under New Mexico law, the guiding principle for a court construing a statute "is to determine and give effect to legislative intent." *El Paso Elec. Co v. N.M. Pub. Regul. Comm'n*, 246 P.3d 443, 446 (N.M. 2010) (quoting *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n*, 168 P.3d 105, 112 (N.M. 2007)). "The plain language of a statute is the primary indicator of legislative intent." *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 992 P.2d 860, 864 (N.M. 1999) (quoting *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 970 P.2d 559,

600 (N.M. 1998)).  "In ascertaining legislative intent, the provisions of a statute must be read together with other statutes *in pari materia* under the presumption that the legislature acted with full knowledge of relevant statutory and common law."  *New Mexico ex rel. Quintana v. Schnedar*, 855 P.2d 562, 564 (N.M. 1993) (citing *Inc. Cnty. Of Los Alamos v. Johnson*, 776 P.2d 1252, 1253 (N.M. 1989)).

Considering the language and purpose of the FATA, the Court is persuaded that the retaliation protections of the statute require that a plaintiff's disclosures are reasonably related to the furtherance of a FATA enforcement action.  Broadly speaking, the FATA prohibits knowingly presenting false or fraudulent claims for payment from the State and conspiring to defraud the State.  *See* N.M. Stat. Ann. § 44-9-3.  It provides "incentive[s] to private individuals to act on behalf of the public good by bringing the suit."  *State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 355 P.3d 1, 9 (N.M. 2015).  It "closely tracks the longstanding federal False Claims Act."  *Id*.   Consequently, the New Mexico Supreme Court has found "cases construing FATA's federal analogue, the Federal Claims Act, helpful in understanding the context and purpose of FATA."  *Id*. at 7.   Just like the FCA, the Court finds that the purposes of the FATA are to make the government whole and deter fraud against it.  *See United States v. Dental Dreams, LLC*, 307 F.Supp.3d 1224, 1243 (D.N.M. 2018) (stating purpose of FCA).

Given this purpose and its similarity with the FCA, the Court turns to the retaliation provisions of FATA.  Under the FCA, "an employee need not actually file a

qui tam action to qualify for whistleblower protection, but 'the activity prompting plaintiff's [adverse employment action] must have been taken 'in furtherance of' an FCA enforcement action.'"  *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 704 (10th Cir. 2012) (quoting *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996)).  Having a similar requirement on FATA retaliation claims would further its similar purpose of deterring fraud by incentivizing FATA enforcement actions.  Admittedly, the FATA retaliation language is not as clear on this point as the FCA.  Nonetheless, the statutory language does support this interpretation.  N.M. Stat. Ann. § 44-9-11(B) states that an employer cannot discharge, demote, etc., "because of lawful acts of the employee *on behalf of the employee or others* in disclosing information to a government or law enforcement agency…"  N.M. Stat. Ann. § 44-9-11(B) (emphasis added).  This "on behalf" language supports the interpretation that, to receive the protections of FATA, the employee must have been making the disclosures with an expectation of some gain as he (or a third party) would with a private FATA enforcement action.  Without this requirement and under Plaintiff's interpretation, the Court would be forced to accept that the legislature tucked into the FATA an unlimited protection for any disclosure of information to a government or law enforcement agency by an employee.

Consequently, the Court holds that a FATA retaliation claim requires that the employee's disclosures must have been reasonably related to the furtherance of FATA

38

enforcement action.  Because Plaintiff does not argue that his disclosures were so related, *see generally doc*. *22* at 24-25, dismissal is warranted.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss and for Qualified Immunity (*doc. 8*) is GRANTED in part and DENIED in part, and Plaintiff's Motion for Leave to File Second Amended Complaint (*doc. 31*), is GRANTED.  The claims set forth in Count II of Plaintiff's Second Amended Complaint are therefore DISMISSED with prejudice.  Because Defendant Mixon is entitled to qualified immunity, any § 1983 claim brought against her in Count III is DISMISSED.  Plaintiff's Count III claim against Defendant Village remains.

IT IS HEREBY ORDERED that Plaintiff is granted leave to file his Second Amended Complaint and shall do so **within seven (7) days of the issuance of this Order**.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**